**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**EMKINETICS, INC.,**

       **Plaintiff,**

       v.

**AVATION MEDICAL, INC.,**

       **Defendant.**

       **Case No. 2:25-cv-207**
       **JUDGE EDMUND A. SARGUS, JR.**
       **Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

This matter is before the Court on a Motion to Stay Proceedings by Defendant Avation Medical, Inc. (ECF Nos. 14, 14-1.) Plaintiff EMKinetics, Inc. ("EMK") responded in opposition (ECF No. 15), and Avation replied in support (ECF No. 17). For the reasons below, the Court **DENIES AS MOOT** Defendant Avation's Motion to Stay Proceedings (ECF No. 14) but **ORDERS** the parties to meet and confer and submit a proposed joint briefing schedule **within 14 days of the date of this Order**.

## BACKGROUND

EMK and Avation are in a patent dispute that has resulted in a series of proceedings filed by both parties in federal court and before the United States Patent and Trademark Office ("USPTO") Patent Trial and Appeal Board ("PTAB"). EMK filed this lawsuit about one year ago, alleging that it is the owner of U.S. Patent No. 12,226,632 ("the '632 Patent") and that Avation is infringing on and will continue to infringe absent injunctive relief "at least Claim 25 of the '632 Patent in violation of at least 35 U.S.C. § 271." (Compl., ECF No. 1, ¶¶ 7, 9.) EMK asserts that Avation infringes on Claim 25 through its Vivally® neuromodulation device, which treats overactive bladder or incontinence. (*Id.* ¶ 10.) EMK asks for a judgment that Avation has infringed on the '632 Patent, a damages award compensating it for Avation's alleged

infringement, an order to continue future royalty payments, and a permanent injunction against Avation to stop infringing. (*Id.* PageID 7–8.) Avation answered and counterclaimed for noninfringement of the '632 Patent and invalidity of the '632 Patent. (ECF No. 13.)

A few months after EMK filed this lawsuit, Avation filed the Motion to Stay Proceedings. (ECF Nos. 14, 14-1.) Avation explains that the '632 Patent is a member of a large family of patents assigned to EMK. (ECF No. 14-1, PageID 192.) Avation asserts that several "sister" patents related to the '632 Patent contain the same claims as Claim 25 of the '632 Patent and are being reviewed by the PTAB to determine whether these "sister" patents are invalid in view of prior art. (*Id.*) Avation urges that a stay is appropriate and necessary to conserve judicial resources and avoid inconsistent rulings between the federal courts and PTAB. (*Id.*)

Avation provides additional background in its Motion: it is a neuromodulation and digital health company that makes wearable peripheral neuromodulation accessible to patients. (*Id.* PageID 193.) Avation's Vivally® is an "FDA [U.S. Food and Drug Administration]-cleared, closed-loop, at home wearable neuromodulation system for patients suffering from urge urinary incontinence and urinary urgency caused by overactive bladder syndrome." (*Id.* PageID 193–94.) Avation asserts that EMK has not commercially practiced the patent it asserts in this case or the other patents in related litigation. (*Id.*) EMK "acquires patents in order to strongarm legitimate companies, like Avation, into licenses or settlements by threatening time consuming and expensive patent infringement litigation," says Avation. (*Id.*)

EMK responds that it is an activity entity. (ECF No. 15, PageID 644.) It began doing trials to obtain FDA clearance in 2010s of its technology—the "TranStim device"—but the FDA has not yet provided clearance. (*Id.* at PageID 645.) It sells its TranStim device in China, where

2

the National Medical Products Administration has approved the device for commercial sale. (*Id.*) EMK also notes it has received millions of dollars in equity financing. (*Id.*)

Avation states that in 2023 and 2024, EMK sent it letters accusing it of patent infringement and attempting to set up licensing deals related to the following patents: U.S. Patent 11,224,742 ("the '742 Patent"), U.S. Patent 9,002,477 ("the '477 Patent"), and U.S. Application 17/568,276, which later issued as U.S. Patent 11,844,943 ("the '943 Patent"). (ECF No. 14-1, PageID 194–95.) Avation went on the offensive. It filed a complaint for declaratory judgment of noninfringement of the '943, '742, and '477 Patents against EMK in the U.S. District Court for the Northern District of California. *See Avation Med., Inc. v. EMKinetics, Inc.*, No. 4:24-cv-01702-JST (N.D.C.A. Mar. 19, 2024) ("N.D.C.A. Action"). Then Avation filed a series of PTAB proceedings challenging the '943, '742, and '477 Patents ("the Challenged Patents"). As Avation describes:

> Avation filed a petition for post-grant review ("PGR") challenging all claims of the '943 Patent on July 1, 2024 in PGR2024-00043. *See Avation Medical Inc. v. EMKinetics, Inc.*, PGR2024-00043, Paper 2 at 1 (PTAB). Avation then filed a petition for *inter partes* review ("IPR") challenging all claims of the '742 Patent on September 3, 2024 in IPR2024-01375. *See Avation Medical Inc. v. EMKinetics, Inc.*, IPR2024-01375, Paper 2 at 1 (PTAB). Avation also filed a petition for IPR challenging all claims of the '477 Patent on September 5, 2024 in IPR2024-01378. *See Avation Medical Inc. v. EMKinetics, Inc.*, IPR2024-01378, Paper 2 at 1-2 (PTAB).

(ECF No. 14-1, PageID 195.)

Following these filings, the parties jointly stipulated to stay the N.D.C.A. Action pending the PTAB's decisions in the above proceedings. (*Id.*); N.D.C.A. Action, ECF No. 35. In that stipulation, the parties noted the stay "may avoid unnecessary and duplicative litigation." (ECF No. 14-1, PageID 195); N.D.C.A. Action, ECF No. 35. The PTAB then instituted each of the proceedings and by doing so found that substantial questions existed regarding the validity of the

Challenged Patents. (ECF No. 14-1, PageID 196; ECF Nos. 14-2, 14-3, 14-4); (*see, e.g.*, ECF No. 14-2 (explaining that under 35 U.S.C. § 324, the PTAB may not authorize PGR to be instituted unless the information presented in the petition if not rebutted "would demonstrate that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable," and instituting post-grant review of the '943 Patent); ECF No. 14-3 (explaining that under 35 U.S.C. § 314(a), IPR review cannot be instituted unless information in the petition and responses demonstrates that there is "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition" and instituting IPR review of the '742 Patent).)

Avation continues in its Motion to Stay Proceedings, explaining the background of the '632 Patent, and arguing that claims of the '632 Patent are nearly identical to the claims in the Challenged Patents. (ECF No. 14-1, PageID 198–201.) Avation also provides a chart with a side-by-side comparison of Claim 25 of the '632 with the corresponding claims in the Challenged Patents. (*Id.* PageID 200–201; *see also* ECF No. 14-9.) The Court reproduces the chart here for ease of reference:

4

| '632 Patent Claims | '943 Patent Claims | '477 Patent Claims | '742 Patent Claims |
|---|---|---|---|
| 25[pre] A method of treating overactive bladder or incontinence, comprising: | 1[pre] A method of treating overactive bladder or incontinence, comprising: | 1[pre] A method of performing electrical stimulation therapy, comprising: | 1[pre] A method of treating overactive bladder or incontinence, comprising: |
| 25[a] non-invasively positioning a first portion of a subject's body near an ankle relative to an electrical stimulator such that a tibial nerve within the first portion of the body is directly targeted by the electrical stimulator; | 1[a] non-invasively positioning a first portion of a patient's body near an ankle relative to an electrical stimulator such that a posterior tibial nerve within the first portion of the body is directly targeted by the electrical stimulator; | 1[a] non-invasively positioning a first portion of a patient's body relative to an electrical stimulator such that a posterior tibial nerve or branch thereof within the first portion of the body is in proximity to the electrical stimulator; | 1[a] non-invasively positioning a first portion of a patient's body relative to an electrical stimulator such that a branch of a posterior tibial nerve within the first portion of the body is directly targeted by the electrical stimulator; |
| 25[b] passing a current through the electrical stimulator; | 1[b] passing a current through the electrical stimulator; and | 1[b] passing a current through the electrical stimulator; | 1[b] passing a current through the electrical stimulator; and |
| 25[c] delivering an electrical stimulus from the electrical stimulator to the tibial nerve such that the tibial nerve directly receives the electrical stimulation to treat overactive bladder or incontinence; | 1[c] delivering an electrical stimulus from the electrical stimulator to the posterior tibial nerve such that the posterior tibial nerve directly receives the electrical stimulation to treat overactive bladder or incontinence. | 1[c] delivering an electrical stimulus from the electrical stimulator to the posterior tibial nerve or branch thereof; | 1[c] delivering an electrical stimulus from the electrical stimulator to the branch of the posterior tibial nerve such that the branch directly receives the electrical stimulation to treat overactive bladder or incontinence. |
| 25[d] detecting for an electrical conduction in the tibial nerve via | 3. The method of claim 1 further comprising detecting | 1[d] detecting electrical conduction through the posterior | 3. The method of claim 1, further comprising detecting |

| '632 Patent Claims | '943 Patent Claims | '477 Patent Claims | '742 Patent Claims |
|---|---|---|---|
| a sensor in communication with a controller by detecting for a lack of presence of the electrical conduction at a second portion of the subject's body distant from the first portion as an indicator of proper electrode placement upon the first portion; and | a muscular response caused by an electrical conduction or stimulation of the posterior tibial nerve. 10. The method of claim 1 further comprising detecting for a lack of presence of electrical conduction at a second portion of the patient's body distant from the first portion as an indicator of proper electrode placement upon the first portion. | tibial nerve or branch thereof or detecting a muscular response caused by an electrical conduction through the posterior tibial nerve or branch thereof via at least one sensor positioned along a second portion of the body; | a muscular response caused by an electrical conduction or stimulation of the branch of the posterior tibial nerve. 10. The method of claim 1 further comprising detecting for a lack of presence of electrical conduction at a second portion of the patient's body distant from the first portion as an indicator of proper electrode placement upon the first portion. |
| 25[e] adjusting the electrical stimulus via the controller in response to the electrical conduction detected in the tibial nerve. | | 1[e] adjusting the current via a controller in communication with the electrical stimulator based on the feedback. | |

(*Id.* PageID 200–201; *see also* ECF No. 14-9.)

5

Avation urges that a stay would simplify the issues: "[g]iven the similarity between the claims of the '632 Patent and the Challenged Patents, *it is likely that the PTAB's validity determinations regarding the Challenged Patents will be dispositive as to the validity of the '632 Patent here.*"[1] (ECF No. 14-1, PageID 206 (emphasis in original).) Nor would EMK be prejudiced because the parties are not competitors and thus any harm to EMK would be compensable by monetary damages. (*Id.* PageID 206–10.) Finally, the early stage of the litigation favors a stay. (*Id.* PageID 210.)

EMK responds that a stay is not appropriate because the '632 Patent is not the subject of any PTAB proceedings. (ECF No. 15, PageID 643, 649.) EMK says this case involves a different patent and different claims than the Challenged Patent. (*Id.*) It argues that Avation is asking the Court to "blend the claims" of separate patents and that "[c]ombining elements of different patent claims from different patents is improper in any context, and Avation cites no authority allowing the Court to do so." (*Id.* PageID 652.) As for prejudice, EMK argues it would be prejudiced by a delay, and it asserts it is in competition with Avation despite not yet receiving FDA-clearance. (*Id.* PageID 655.)

## ANALYSIS

The relief Avation requests is that the Court stay this action "pending final resolution of the [PTAB] proceedings challenging all claims of U.S. Patent 11,844,943 (PGR2024-00043), U.S. Patent 11,224,742 (IPR2024-01375), and U.S. Patent 9,002,477 (IPR2024-01378)" (ECF No. 14, PageID 186), and "that the Court grant[] its motion and stay[] this case pending the

---

[1] Courts consider the following when deciding whether to grant a stay pending parallel proceedings before the USPTO: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Intell. Ventures II LLC v. Huntington Bancshares Inc.*, No. 2:13-CV-00785, 2014 WL 2589420, at *2 (S.D. Ohio June 10, 2014) (Frost, J.).

PTAB's final decisions on the validity of the '943, '742, and '477 Patents" (ECF No. 14-1, PageID 193). When Avation filed its Motion to Stay Proceedings, the PTAB proceedings were ongoing. After reviewing the briefing on Avation's Motion, the Court reviewed the PTAB proceedings' dockets and found that the final decisions on the validity of the Challenged Patents have been issued. *See Avation Med. Inc. v. EMKinetics, Inc.*, Final Written Decision, PGR2024-00043, 2026 WL 60127 (P.T.A.B. Jan. 7, 2026) ("*'943 Final Decision*"); *Avation Med. Inc. v. EMKinetics, Inc.*, IPR2024-01375, 2026 WL 736960 (P.T.A.B. Mar. 16, 2026) ("*'742 Final Decision*"); *Avation Med. Inc. v. EMKinetics, Inc.*, IPR2024-01378, 2026 WL 735416 (P.T.A.B. Mar. 16, 2026) ("*'477 Final Decision*"). This Court can take judicial notice of the PTAB proceedings and Decisions, particularly given they are the basis for Avation's requested stay. *See Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) ("[I]t is well-settled that federal courts may take judicial notice of proceedings in other courts of record") (citation modified); *Williams v. Warden, Summit Behav. Healthcare*, No. 2:23-CV-576, 2023 WL 2080353, at *6 n.4 (S.D. Ohio Feb. 17, 2023) (Vascura, M.J.) (citing *Lyons*); *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 n.2 (6th Cir. 2012) (same proposition).

The PTAB determined that as for the '943 Patent, Avation had proved by the preponderance of the evidence that claims 1–39 are unpatentable. *'943 Final Decision*, 2026 WL 60127, at *1. Similarly, the PTAB determined Avation had established by the preponderance of the evidence that the challenged claims 1–13 of the '742 Patent are unpatentable, *'742 Final Decision*, 2026 WL 736960, at *1, and the challenged claims 1–10 of the '477 Patent are unpatentable, *'477 Final Decision*, 2026 WL 735416, at *1.

Avation's specific requested relief is therefore moot. That said, Avation steadfastly argued in its Motion that the '632 Patent has nearly identical claims (or at a minimum,

overlapping ones) and uses the same claim terms and limitations to the claims in the Challenged Patents. (ECF No. 14-1, PageID 205–06.) PTAB's validity determinations regarding the Challenged Patents are dispositive of the validity of the '632 Patent, says Avation. (*Id.* PageID 206.) EMK disputes this and argues that the '632 Patent is distinct from the Challenged Patents. (*See* ECF No. 15.) The Court requires briefing to decide these issues.

## CONCLUSION

For the reasons above, the Court **DENIES AS MOOT** Defendant Avation Medical, Inc.'s Motion to Stay Proceedings. (ECF No. 14.) **Within 14 days of the date of this Order**, EMK and Avation are **ORDERED** to meet and confer and to submit a proposed joint briefing schedule on the Court's docket. The joint schedule shall propose dates for the parties to move or to file briefs that address the applicability or inapplicability of the PTAB's Final Written Decisions regarding the '943, '742, and '477 Patents on the '632 Patent and this litigation.

This case remains open.

**IT IS SO ORDERED.**

**3/31/2026**
**DATE**

**s/Edmund A. Sargus, Jr.**
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

8